Could the clerk call the next case, please? Brief 11-0826, Scott Harn v. Stanley Tucker v. Daniel Bachman, et al., appellee, Thomas McIntyre. Mr. Tucker, good afternoon. Good afternoon, Your Honors. Clerk, please. Counsel. I believe the briefs have very well covered the issues here in this case, and so I'm going to be sort of brief, and I want to concentrate on the Jack Harn affidavit. And I'm going there because I think the entire case can be disposed of by deciding that in a Cohen's favor. Mr. Harn's affidavit is a lay opinion about mental capacity. I would put lay in quotes, actually, in this particular case, which we know from the cases in the brief such opinions are admissible and will contest proceedings. Just a thumbnail review of the affidavit. Mr. Jack Harn is 67 years old. He has a bachelor's degree in pharmacy from Drake. He's employed at Western Illinois University as the chief pharmacist. He is the brother of the decedent in this case, and of course has known him his entire life up to his death. His affidavit indicates that he saw him at least once per month, except a short time when he was in Jacksonville, which is a time not an issue. He states that the decedent was an alcoholic most of his adult life and continually after about 1980. He then gives his opinion. In his opinion, the decedent would not have had the capacity to appreciate or conduct any normal relationship with his children or understand that they were or should have been the natural objects of his affection or love. At any time after 1980 or 1981, he frequently exhibited irrational rage and anger at anyone around him, including the petitioner. And I point out that lay opinions are admissible on capacity and will contest, and I would say that perhaps this is not altogether a lay opinion. This man is a pharmacist, and of course I think the inference in favor of Plaintiff would be that he's obviously familiar with the effects of medicines and what have you on the body. Now in will contest, there are two types of alcoholism or alcoholic liquors. There are two types of scenarios. The first scenario is that the decedent was intoxicated at the time he made the will. Now that is not this case. This case is that his brother, who knew him well, believed and swore on the road that his alcoholism had so affected him that it has affected his capacity to really realize who his family is. So this is a situation with long-term alcoholism affecting a person's will. Even though his request to the son was $1, in the will he does bequeath $1 to that child. I mean he does recognize by virtue of that that that is his son and is in some way an object of his concern or that that is somebody that he is related to. It is true that that was in the will, yes. The import of that in the face of this witness's opinion doesn't convince me, but we must remember we must concentrate on what we're doing here. We're not deciding. We're not deciding. We're not deciding. We are identifying issues of fact. We're not deciding. That is not our purpose here, our motion for summary judgment. We are identifying genuine issues of material fact. That is for the fact finder. That is for their argument. For them to stand up and say to the jury at final argument, you know, he must have known what was going on because he left $1 to Scott in the will. That's argument about the evidence. That's not what we're doing today. This is neither, you know, the after the trial nor is it on a motion for directed verdict where you might get into some of that. But all we're doing here, all it takes in this situation is a genuine issue of material fact. And if the trial court improperly concluded that this did not create, which it did, a genuine issue of material fact, then that is for you to address. And it only takes one, you know. We're not in federal court where there's a much larger burden on the plaintiff to lay out his whole case in response to a motion for summary judgment. It only takes one. And we only have to win with the jury on one. Although there are some arguments to the contrary, we have met those in our brief. And if you read the judge's letter here, he kind of got into that. He went through a lot of things which we perhaps don't feel that are important to the case, but he talked about refuting a couple of times. Refuting, refuting. Well, we're not here on a motion for summary judgment to talk about refuting. If there is a genuine issue, if the plaintiff has laid out one fact, the fact that the defendant disagrees or the fact that the defendant's affidavit disagrees or their deposition disagrees doesn't make any difference. We're looking to identify a genuine issue of material fact. In that process, we are remembering that for the petitioner, there's a liberal construction on what he presents, not a strict construction. We don't attack what the petitioner says in his affidavits or other data presented in opposition to the motion. The other thing we need to remember and recall is that in this process, all inferences are for us. All inferences are for a petitioner. That's laid out in the case law. It's a fundamental procedure with respect to summary judgment. I think all the other issues are adequately covered in the brief, and that's all the comments I have. If there are any other questions, I'd be pleased to address them. I guess I have a question, Mr. Tucker. Affidavits have to be given on personal knowledge. I don't know for sure, but I would think that when you're doing an affidavit on personal knowledge that you have to have some demonstrable qualification for advancing the opinion. You're suggesting that because Jack Harn is a pharmacologist or a professor of pharmacology or the chief pharmacist at WIU, that somehow he has the capacity to determine when alcoholism has impaired a person to the extent that they don't know the natural recipients of their bounty. Bounty, I guess, is the term that we use most of the time. And I'm wondering if that undermines your affidavits. It doesn't seem to me to undermine my affidavit. In paragraph 6, of course, he does indicate that this is of his own knowledge. Now, with respect to the fact that he is a pharmacist, all I'm suggesting is this is not a senior citizen roommate at the nursing home that's saying these things. It's a trained pharmacist who I'm suggesting would have a little better knowledge than just an ordinary lay person. This affidavit is not an expert's affidavit. It's a lay person's affidavit. Well, certainly you could argue that it is a weight argument. It is also a foundation argument, which is what Justice McDade was getting into. No, but my question again is this was not introduced as an expert opinion. This was introduced as a lay person's opinion. Absolutely. That's correct. But it does say he's a pharmacist. In any event, we don't want to go down the road of deciding a fact issue in favor of the plaintiff or the defendant. We want to go down the road of identifying whether or not the petitioner has adequately created an issue, a genuine issue of material fact. And under the Harn Affidavit, we want it construed consistent with the law, we want it liberally construed, and we want all of the inferences with respect to the things he said to be made in our favor. And when you do that, I think you can conclude there's an issue of fact here, and that's as far as you need to go in this case. You don't really need to decide any of the other issues. Any more questions? I'm not quite finished with my question, I guess, because a pharmacist would be able to say that as a general rule, one could expect these types of side effects from this type of drug. I don't know that a pharmacist would be able to say this particular effect is a result of alcoholism in this person. I think that your affidavit attempts to exceed the knowledge of a pharmacist. Well, perhaps it does, Your Honor. Perhaps it does. That's my spin on it today. It wasn't presented as an expert affidavit, but I do notice that he is a pharmacist. The point is, really, the substance of this affidavit is that this man was an alcoholic for more than 20 years, from 1980 for the entire rest of his adult life, and his brother recognized this. Well, in what capacity is his brother able to diagnose alcoholism? How can he say his brother is an alcoholic? Is he a pharmacist or a brother? Does he have the qualifications to diagnose someone with alcoholism? Well, let's forget the pharmacist, and let's just talk about Jack Hearn as the decedent's brother. They live in the same community. He was around him, he says, at least once a month. He knows that he was an alcoholic. I know people who are alcoholics, and I know pharmacists. I mean, if you're around them long enough, you know that. And Jack knows that, and he's been willing to say it under oath. So you don't think that alcoholism requires a medical diagnosis, that any lay person can label someone with certainty an alcoholic? I do not, and I don't believe that issue was raised. That particular issue was not raised below by the defense. Counsel has two minutes. Anything else? No, thank you. Thank you. Mr. McIntyre, good afternoon. Your Honors, my name is Tom McIntyre, a Bradshan Everett LLC, attorney for Daniel C. Hearn, executive at the will of the testator Larry W. Hearn. May it please the court. Counsel. Your Honors, pursuant to the Illinois public case, Carter v. GE Electronics, which I believe is cited on page three of Daniel Hearn's affidavit brief, a defendant's motion for summary judgment, the plaintiff, while not required to establish his case as he would at trial, must present some factual basis that would arguably entitle him to judgment. Pursuant to the 1997 public case, Henry v. Rosler, cited first on page eight of our appellate brief, evidence of a lack of testamentary capacity must relate to a time at or near the making of the will. Evidence of mental condition at other times is wholly inconsequential and irrelevant. The appellate counsel here today has indicated that the affidavit of Jack Hearn Jr., the late affidavit of Jack Hearn Jr., creates an issue, a genuine issue of material fact that precludes summary judgment. I won't go through again what the affidavit reads. But I will say that notably absent in Jack Hearn Jr.'s affidavit is any evidence that Jack saw Larry in May of 2004, never mind on the date that Larry actually executed his will on May 17, 2004. It also fails to articulate how Larry's alleged alcoholic anger rendered him unable to understand the natural objects of his bounty. Jack's affidavit never states that Larry had trouble remembering the natural object of his bounty or that he was forgetful when he drank. The nexus between Larry's drinking and his anger and lack of capacity is not presented and, frankly, is just non-existent. Although Scott Hearn attempts to circumvent this requirement by pointing out that Larry did execute his will within the 28-year time period of Jack Hearn Jr.'s opinion, the fact remains that Jack's affidavit is not specific enough to be relevant in a discussion of Larry's condition at or around the time the will was executed. Your Honors, in essence, Illinois law requires proof of testamentary capacity to be a time-specific snapshot of the testator's mental state. Simply put, Jack Hearn Jr.'s affidavit amounts to a panoramic photo. The conclusion Jack draws from the facts he states is pure speculation. That, combined with the failure of Jack's affidavit to articulate specific dates on which he saw Larry, or the condition on those dates for that matter, renders Jack's affidavit irrelevant to these proceedings. Pursuant to Illinois Appellate Case, Village of Palatine v. Palatine Associates, LLC, cited in our appellee brief on page 3, mere speculation, conjecture, or guess is insufficient to withstand a summary judgment. Simply put, Your Honors, this is exactly what this is. Speculation on the part of the affiant that he's an alcoholic, so he must have been drunk on the date the will was executed, and he must not have had the ability to understand the natural objects of his bounty. The appellant takes great pains to tell the court that it is a lay affidavit. In his brief, he cited the case Quelmall's, which says that lay opinions are relevant in a will contest. However, this case is distinguished from Quelmall's because the affiant in Quelmall's saw the testator and interacted with him on the day the will was executed. Here, there is just no evidence that that happened. You would surely think that the best evidence from Jack's perspective would be an interaction near the date. We just do not have evidence of that. Reversing for a second, the appellant's petition originally made two claims. The first is that Larry Harn was unduly influenced by the executor, Daniel Harn. The facts show that Scott has completely failed to present any evidence whatsoever or argument to support this claim in order to articulate why the lower court's decision should be overturned. Pursuant to Supreme Court Rule 341H7, these arguments are being waived. And as such, summary judgment as it pertains to Scott's argument of undue influence should be affirmed. Pursuant to both the Carter case, which I mentioned earlier, and the Roessler case, a fiduciary relationship must exist between the testator and the beneficiary. The primary beneficiary must be in a position to dominate and control the dependent testator. The testator must repose trust and confidence in the beneficiary. And the beneficiary must be instrumental in or participated in the procurement of the will for a claim of undue influence to stand. As I mentioned, not only has Scott Harn failed to present any factual basis that would entitle him to judgment on the claim of undue influence, but he has failed to produce any evidence whatsoever in his briefs. As I said before, according to Supreme Court Rule 341H7, these arguments are being waived. And summary judgment should be affirmed, as the lower court stated. Your Honors, although my appellant did not get into it, I'd like to discuss briefly the affidavit of Brennan Bachman, upon which he also relies in making his argument to the court. Part of his argument, which he did not state, is that since Daniel Harn told Brennan Bachman that she is not the biological daughter of Larry Harn, and that Larry Harn enlisted Daniel Bachman, now Harn, as his daughter in his 2004 will, then therefore Larry did not have the ability to know the natural object of his bounding when he signed the will. I'd like to briefly touch on this, because pursuant to the Illinois appellant case, Conner v. Merrill Lynch Freelty, cited on page 3 of our brief, facts unrelated to essential elements of the plaintiff's cause of action are immaterial, and no matter how sharply controverted, their presence in the record will not warrant denial or motion for summary judgment. Your Honors, while Daniel's paternity is surely a contentious issue, it is wholly unrelated to any essential element of Scott's case. The fact remains that Daniel Harn is Larry's daughter by operation of law pursuant to 750 ILCS 45-5-1. These facts were set forth in the uncontested affidavit of Deanna Stiltz. Because Daniel was born of the marriage of Deanna Harn, now Deanna Stiltz, and Larry Harn, she is just as much a natural object of Larry's bounding as any of her other siblings. Your Honors, Brendan Bachman's affidavit goes on to state other claims related to dates much past the execution of Larry Harn's will, starting in 2008, and it should be noted that Brendan's affidavit does not discuss Larry Harn's capacity whatsoever. As I mentioned earlier, the case of Henry Estate of Rosler, on page 8 of our brief, evidence of lack of testamentary capacity must relate at a time near or on the making of the will, and evidence at any other time is inconsequential and irrelevant. Accordingly, the additional evidence in Brendan Bachman's affidavit should be seen as irrelevant and failing to raise a genuine issue of material fact necessary for Scott Harn to avoid our motion for summary judgment. Your Honor, there was no answer to our motion for summary judgment. There were two other affidavits, but they are not argued, and as I discussed earlier, they are waived. Accordingly, we are left with the two affidavits which we have discussed. Your Honor, this case demonstrates exactly what summary judgment is for. Scott Harn has only raised questions of facts which are either irrelevant or unrelated to the essential elements of a plaintiff's cause of action. These questions, although contentious, are immaterial to this case. Due to the fact that Scott's two affidavits both fail to raise a genuine issue of material fact necessary to avoid summary judgment, and that his petition and argument depend entirely on these affidavits, we would ask that this court affirm the circuit court's ruling in its entirety. Any questions? No, I think that's all. Thank you. Mr. Tucker, any rebuttal? Yes, just briefly, Your Honor. I would point out again that during Lydon Seaton's adult life after 1980, Jack indicated in his affidavit that he saw Lydon Seaton at least monthly. That's a pretty good association. I see my brothers monthly, and I have a pretty good idea what they're doing based on that. The defendant here, the executive, did not attack Jack Harn's affidavit for lack of specificity. They attacked him for hearsay and relevance, appendix page 46 and 47. We need to remember that we're not talking about an intoxicated incident at the time of the well, but long-term alcoholism. Any questions? That's all. Thank you very much. Thank you. I thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.